826 So.2d 55 (2002)
Ernest & Evelyn SINGLETON, William Singleton, Jr., Perry Smith, Brenda Henderson, Individually and on Behalf of Her Minor Children, Mikila and Keith Henderson, Mandalay Properties, LLC, Anthony J. Guarisco, Jr., Marilyn G. Vinson, Terry D. Guarisco, Sr., Individually and as Representatives of All Those Similarly Situated
v.
NORTHFIELD INSURANCE COMPANY, the Lumbermen's Mutual Casualty Company, Texas Meridian Production Corporation, the Meridian Resource & Exploration Company, George Smith, George Craig, Kurt D. Byth, Patterson Services, Inc., Reliance Insurance Company, Commercial Underwriters Insurance Company and Petroleum Professionals International, Inc.
No. 2001 CA 0447.
Court of Appeal of Louisiana, First Circuit.
May 15, 2002.
Writ Denied September 30, 2002.
*58 Conrad S.P. Williams, III, Michael X. St. Martin, Christopher J. St. Martin, Houma, Joseph M. Bruno, David S. Scalia, New Orleans, Calvin C. Fayard, Jr., Denham Springs, Counsel for Plaintiffs-Appellees Ernest & Evelyn Singleton, William Singleton, Jr., Perry Smith, Brenda Henderson, Individually and on behalf of Her Minor Children, Mikila and Keith Henderson, Mandalay Properties, LLC, Anthony J. Guarisco, Jr., Marilyn G. Vinson, Terry D. Guarisco, Sr., Individually and as Representative of All Those Similarly Situated.
Joseph E. LeBlanc, Jr., George B. Jurgens, III, Lindsay A. Larson, III, Hollis H. Robinson, New Orleans, Counsel for Defendant-Appellee Patterson Services, Inc.
M. Taylor Darden, J. Christopher Martin, Jack H. Fontham, New Orleans, Counsel for Defendant-Appellant Burlington Resources Oil & Gas Company.
Morgan J. Wells, Jr., T. Justin Simpson, J. Calvin Box, Metairie, Counsel for Defendants-Appellants The Meridian Resource & Exploration Company, Texas Meridian Production Corporation, The Meridian Resource Corporation, and The Meridian Production Corporation.
Russell B. Kahn, D. Reardon Stanford, Lafayette, Counsel for Defendant-Appellant George Craig.
Arthur W. Landry, Elizabeth Salzer Schell, New Orleans, Counsel for Defendant-Appellant Lumbermen's Mutual Casualty Company.
Matt M. Gray, III, Winston E. Rice, John W. Wise, Jonathon R. Cook, New Orleans, Counsel for Defendant-Appellant Northfield Insurance Company.
Philip D. Nizialek, Houston, TX, Counsel for Defendant-Appellant Commercial Underwriters Insurance Company.
James L. Pate, Lafayette, Counsel for Defendant-Appellee Williams Insurance, Co.
Joshua S. Force, James M. Garner, Peter L. Hilbert, Jr., New Orleans, Counsel for Defendant-Appellant George Smith.
Bruce R. Hoefer, Jr., D. Russell Holwadel, New Orleans, Counsel for Defendants-Appellants Petroleum Professionals International, Inc. and Kurt D. Byth.
Christopher J. Aubert, Bernard J. Williams, Richard C. Badeaux, New Orleans, Counsel for Defendant-Appellee Reliance Insurance Co. of Illinois.
Ralph S. Hubbard, III, Celeste Darmstadter Elliot, Carolyn B. Hennesy, New Orleans, Counsel for Defendant-Appellee Liberty Mutual Fire Insurance Co.
G. Benjamin Ward, New Orleans, Counsel for Defendant-Appellee Associated International Insurance Co.
Robert A. Redwine, New Orleans, Counsel for Defendant-Appellee United National Insurance Co.
Before: CARTER, C.J., PARRO and CLAIBORNE,[1] JJ.
*59 CLAIBORNE, J.
This is an appeal by The Meridian Resource & Exploration Company, Texas Meridian Production Corporation, The Meridian Resource Corporation, The Meridian Production Corporation (collectively, Meridian), Burlington Resources Oil & Gas Company (Burlington), Northfield Insurance Company, Lumbermen's Mutual Casualty Company, Commercial Underwriters Insurance Company, Kurt D. Byth, Petroleum Professionals International, Inc., George Smith and George Craig challenging the decision of the trial court to certify a class action.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY
This suit concerns the blowout of the C.M. Thibodaux Well # 2 (the well), which occurred on or about June 25, 1999. R & B Falcon Drilling U.S.A., Inc. (Falcon) drilled the well on behalf of Meridian at a location near the mouth of Bayou Chêne and the Intracoastal Waterway in Assumption Parish.[2] The well was owned by Meridian, Burlington, and various other working interest owners.
On or about June 22, 1999, Falcon was installing a casing liner in the well. During this installation, the liner became stuck. Efforts to free the liner were unsuccessful, and the crew was required to shut in the well. Pressure inside the well steadily increased, forcing the Falcon crew to abandon the rig on the afternoon of June 24, 1999. Persons on nearby Avoca Island were also evacuated at that time. The well subsequently blew out at the surface on the afternoon of June 25, 1999, venting hydrocarbons and other subsurface materials into the air. Later that day, the well caught on fire as lightning from a passing thunderstorm ignited the blowout. The well burned continuously for approximately two weeks, until it bridged over on July 3, 1999, and all further gas flow ceased. It was subsequently plugged and abandoned.
Three days after the blowout, the plaintiffs filed this suit for damages.[3] The plaintiffs allege that they are members and representatives of the class of all individuals who are residents of, employed and/or conduct business in, or own property in the parishes of Terrebonne, St. Mary, and Assumption and who sustained losses as a result of the blowout. After numerous amendments to the petition, the plaintiffs ultimately filed a Motion for Class Certification, which was opposed by several of the defendants.
The hearing on the plaintiff's motion was held on September 27, 2000, with both sides calling lay and expert witnesses. At the hearing, the parties stipulated to the surface location of the well, the identities of the owners and operators of the well, and the circumstances surrounding the blowout. They also stipulated that all of the approximately 35 residents of Avoca Island were evacuated on June 24, 1999, and that the fabrication facility of J. Ray McDermott, Inc. (McDermott) in Amelia was shut down for several days as a result of the blowout. *60 It was also stipulated that there are more than 95 individuals or entities claiming to own an interest in the hydrocarbons produced, or capable of being produced, from the well. No stipulation was entered as to the number of individuals claiming injury or damage not related to lost mineral royalties.
After hearing the testimony and evidence presented, the trial court granted the plaintiffs' motion and certified the action as a class action. The court certified two subclasses of claimants and appointed representatives for each.[4]
The first subclass was designated the "Above the ground" subclass and was defined as:
All persons and/or entities who resided in, were present in, or conducted business in the Parishes of Terrebonne, St. Mary, and/or Assumption, State of Louisiana, and who claim personal injury, environmental property damage, loss of earnings and/or other non-pecuniary and/or economic injuries as a result of the June 24, 1999 "blowout" of the Thibodaux Number 2 well.
The trial court appointed Ernest and Evelyn Singleton and Brenda Henderson as the representatives for this subclass.
The second subclass was designated the "Below the ground" subclass and was defined as:
All persons who own a mineral interest in the lands located within and beneath the geographic surface boundaries of the mineral unit established by the Louisiana Department of Natural Resources, Office of Conservation for the Thibodaux Number 2 and/or 3 well(s) and who, as a result of the "blowout" of the Thibodaux Number 2 well claim a loss to said mineral interest.
William Singleton, Jr. was appointed as the representative of this subclass.
The defendants applied to this court for supervisory writs seeking review of the trial court's decision to certify the class action. The application was denied, but this court determined that the defendants were entitled to file a suspensive appeal of the trial court's decision because they had demonstrated that irreparable harm might result to them from an erroneous certification of this matter as a class action.[5] This appeal followed.

ASSIGNMENTS OF ERROR
Appellants argue that the proposed class does not meet all of the requirements established by article 591 of the Louisiana Code of Civil Procedure for an action to be properly certified as a class action. They focus specifically on four issues: (1) the class is not so numerous that joinder of all members is impracticable; (2) the claims of the class representatives are not typical of those of the absent class members; (3) the class representatives do not adequately represent the absent class members; and (4) the class definition is not supported by the record. In addition, the appellants challenge the trial court's determination that the class action procedure is the superior procedural vehicle for adjudicating the claims arising out of the blowout of the well.

STANDARD OF REVIEW
The trial court's decision to certify a class action is a two-step process. Therefore, appellate review of such decisions must also follow a two-step analysis. The *61 trial court must first determine whether a factual basis exists for certifying the matter as a class action. These factual findings are subject to review by the appellate court pursuant to the manifest error standard. Boudreaux v. State, Department of Transportation and Development, 96-0317, p. 5 (La.App. 1st Cir.2/14/97), 690 So.2d 114, 119.
If the trial court finds that a factual basis exists for certifying the action as a class action, it then exercises its discretion in deciding whether to certify the class. This aspect of the judgment is subject to review pursuant to the abuse of discretion standard. Boudreaux, 96-0317 at p. 5, 690 So.2d at 119. In reviewing such decisions, wide latitude must be given to the trial court in considerations involving policy matters and requiring an analysis of the facts under guidelines helpful to a determination of the appropriateness of a class action. Unless the trial court committed manifest error in its factual findings or abused its discretion in deciding that class certification is appropriate, we must affirm the trial court's determination. White v. General Motors Corp., 97-1028, p. 13 (La. App. 1st Cir.6/29/98), 718 So.2d 480, 488, writs denied, 98-2522 (La.12/11/98), 729 So.2d 587, 590.

DISCUSSION
The class action is a nontraditional litigation procedure permitting a representative with typical claims to sue or defend on behalf of, and stand in judgment for, a class of similarly situated persons when the question is one of common or general interest to persons so numerous as to make it impracticable to bring them all before the court. The purpose and intent of class action procedure is to adjudicate and obtain res judicata effect on all common issues applicable not only to the representatives who bring the action, but to all others who are similarly situated, provided they are given adequate notice of the pending class action and do not timely exercise the option of exclusion from the class action. Ford v. Murphy Oil U.S.A., Inc., 96-2913, 96-2917, 96-2929, p. 4 (La.9/9/97), 703 So.2d 542, 544.
Louisiana class action law has always been adapted from Federal Rule of Civil Procedure 23 (Rule 23). Louisiana courts have been directed to look to this rule, and the federal jurisprudence, as indicative of the guidelines for maintaining a class action under Louisiana law, particularly where there is a lack of Louisiana jurisprudence on an issue. See Stevens v. Board of Trustees of Police Pension Fund, 309 So.2d 144, 150 (La.1975); Banks v. New York Life Insurance Co., 98-0551, pp. 7-8 (La.7/2/99), 737 So.2d 1275, 1280, certiorari denied, 528 U.S. 1158, 120 S.Ct. 1168, 145 L.Ed.2d 1078 (2000).
In 1997, the Louisiana legislature enacted Act 839, which substantially amended the law pertaining to Louisiana class action procedure. This legislation completely rewrote the class action provisions to track the language of Rule 23 almost verbatim. However, according to the editor's notes following article 591 of the Louisiana Code of Civil Procedure, these modifications "appear to incorporate much of the jurisprudence, as set forth in McCastle v. Rollins [Environmental Svces. of Louisiana], [456 So.2d 612 (La.1984) ]." Duhe v. Texaco, Inc., 99-2002, p. 7 (La.App. 3d Cir.2/7/01), 779 So.2d at 1070, 1077, writ denied XXXX-XXXX (La.4/27/01), 791 So.2d 637.
Article 591 of the Louisiana Code of Civil Procedure sets forth the prerequisites for maintaining a class action and establishes that the use of the class action device is appropriate when:
1) The class is so numerous that joinder of all members is impracticable;

*62 2) There are questions of law or fact common to the class;
3) The claims or defenses of the representative parties are typical of the claims or defenses of the class;
4) The representative parties will fairly and adequately protect the interests of the class; and
5) The class is or may be defined objectively in terms of ascertainable criteria, such that the court may determine the constituency of the class for purposes of the conclusiveness of any judgment that may be rendered in the case.
All of the above elements must be present for an action to be properly certified as a class action. La.Code Civ. P. art. 591B. The initial burden to establish these elements is on the party seeking to maintain the class action. Conclusory allegations of the pleadings alone are insufficient to establish the existence of a class. Cotton v. Gaylord Container, 96-1958, p. 13 (La. App. 1st Cir.3/27/97), 691 So.2d 760, 768, writ denied, 97-0800 (La.4/8/97), 693 So.2d 147. In determining whether these elements have been established, the court may consider the pleadings, affidavits, depositions, briefs, exhibits, and testimony presented at a certification hearing. Cotton, 96-1958 at p. 13, 691 So.2d at 768; See Livingston Parish Police Jury v. Acadiana Shipyards, Inc., 598 So.2d 1177, 1181 (La.App. 1st Cir.), writs denied, 605 So.2d 1122 (La.1992).
If these prerequisites are met, the trial court must make an additional inquiry before the action may be properly certified as a class action. Paragraph B of article 591 authorizes four possible types of class actions, each with its own separate requirements. The plaintiffs in this matter sought certification pursuant to paragraph B(3). Under this option, the class action may be maintained only if the trial court additionally finds that the questions of law or fact common to all members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.
Class certification is purely procedural. Therefore, the issue at a class certification hearing is whether the class action is procedurally preferable, not whether any of the plaintiffs will be successful in urging the merits of their claims. The court is not authorized by statute or by history of the class action procedure to assess the likelihood of success on the merits before approving a class action. The determination of whether there is a proper class does not depend upon the existence of a cause of action. Hampton v. Illinois Central Railroad Co., 98-0430, 98-0431, 98-0432, 98-0433, 98-0434, 98-0435, p. 6 (La. App. 1st Cir.4/1/99), 730 So.2d 1091, 1093.

NUMEROSITY
The first required element, that the persons constituting the class are so numerous as to make joinder impracticable, is commonly referred to as numerosity. This element is determined based upon the facts and circumstances of each individual case, and there is no set number above which a class is automatically considered so numerous as to make joinder impractical as a matter of law. O'Halleron v. L.E.C., Inc., 471 So.2d 752, 755 (La.App. 1st Cir.1985); Dumas v. Angus Chemical Co., 25,632, p. 5 (La.App.2d Cir.3/30/94), 635 So.2d 446, 450, writ denied, 94-1120 (La.6/24/94), 640 So.2d 1349). Although it is not necessary that all potential class members be identified, the party seeking certification should be able to establish a definable group of aggrieved persons. Boudreaux, 96-0137 at p. 12, 690 So.2d at 123.
*63 The simple allegation of the existence of a large number of potential claimants does not satisfy the necessity to establish the element of numerosity. Hampton, 98-0430, 98-0431, 98-0432, 98-0433, 98-0434, 98-0435 at p. 8, 730 So.2d at 1094-1095; Dumas, 25,632 at p. 5, 635 So.2d at 450. The evidence in the record in the present case establishes the element of numerosity.
The record demonstrates that all parties stipulated to the existence of at least 95 individuals who claim to own mineral interests potentially affected by the blowout. Additional documents admitted into evidence indicate that the number of potentially affected individuals owning interests in the geographical mineral unit to which the well was drilled could be as high as 400. The parties also stipulated that on June 24, 1999, persons on Avoca Island were evacuated. These individuals were relocated to a hotel in Morgan City, where they remained for approximately seven weeks. In addition to these individuals, evidence in the record demonstrates that over 400 claims were made for losses and injuries resulting from the blowout, including over 500 for wages lost by the McDermott employees when the facility was shut down after the blowout. Finally, there is information in the record indicating that at least one other suit had been filed for damages sustained as a result of the blowout.
The class action was devised to solve problems associated with adjudicating lawsuits in cases involving an unwieldy number of parties who should be joined. Livingston Parish Police Jury, 598 So.2d at 1181. Generally, a class action is appropriate whenever the interested parties appear to be so numerous that separate suits would unduly burden the courts, and a class action would "clearly be more useful and judicially expedient than the other available procedures." Cotton, 96-1958 at p. 14, 691 So.2d at 769. Such is clearly the case here.
The record indicates that there are several hundred known individuals who have been potentially damaged by this blowout. Joinder of that many plaintiffs would be impractical. Because the interested parties are so numerous, the courts would be unduly burdened by separate suits or by their joinder, and class action would clearly be more useful and judicially expedient than the other available procedures. Moreover, the class is a definable group whose claims are related to the same incident. See Cotton, 96-1958 at p. 14, 691 So.2d 769. We therefore agree with the trial court that the element of numerosity has been satisfactorily established.

TYPICALITY
In order for a class action to be maintained, the claims of the class representatives must be typical of the claims of the absent class members. La.Code Civ. P. art. 591A(3). Simply stated, this element requires that the claims of the class representatives must be a cross-section of, or typical of, the claims of all class members. Cotton, 96-1958 at p. 16, 691 So.2d at 769. Typicality is satisfied if the claims of the class representatives arise out of the same event, practice, or course of conduct that gives rise to the claims of the other class members and those claims are based on the same legal theory. Duhe, 99-2002 at p. 13, 779 So.2d at 1079; Feinberg v. Hibernia Corp., 1992 WL 176119 at *5 (E.D.La.1992); Honorable v. Easy Life Real Estate System, Inc., 97-6029 (N.D.Ill. 1998), 182 F.R.D. 553, 558.
On appeal, the appellants do not dispute that the claims and alleged injuries of the class representatives and the absent class members arise from the same event. Moreover, appellants do not allege that the claims of the class members are based on *64 different legal theories. Instead, they assert that the class representatives appointed by the court are insufficient, because there must be at least one class representative for each different type of claim encompassed within the class definition. According to the appellants, this means that a class that includes claims for property damages and lost wages cannot be properly certified with class representatives who state claims for only personal injuries or inconvenience. We disagree.
Louisiana jurisprudence does not require that the plaintiffs produce two, or even one, of every kind of claim or of every person included in the class, as representatives. The law only requires that the representatives "typically" and "adequately" demonstrate that they represent a cross section of the claims asserted on behalf of the class. Furthermore, Louisiana jurisprudence does not require that the class representatives exhibit all the different types of possible injuries. Johnson, XXXX-XXXX at p. 10, 790 So.2d at 742.
In this case, all of the plaintiffs will have to demonstrate that the blowout occurred and that the blowout caused damage. In proving liability, all of the plaintiffs will rely on general tort theories. Considering the claims of the plaintiffs and the record before us, we find no manifest error in the trial court's finding that the element of typicality has been established.

ADEQUATE REPRESENTATION
The parties seeking to maintain a class action must also demonstrate that the representative parties will fairly and adequately protect the interests of the class. La.Code Civ. P. art. 591A(4).[6] The test for determining adequate representation consists of three elements: (1) the chosen class representatives cannot have antagonistic or conflicting claims with other members of the class; (2) the named representatives must have a sufficient interest in the outcome to ensure vigorous advocacy; and (3) counsel for the named plaintiffs must be competent, experienced, qualified, and generally able to conduct the proposed litigation vigorously. Duhe, 99-2002 at p. 14, 779 So.2d at 1079.

Antagonistic or Conflicting Claims
The first aspect of the adequate representation test is that the chosen class representative cannot have claims in conflict with the other members of the class. Appellants argue that William Singleton, Jr. cannot adequately represent the "Below the ground" subclass, because significant conflicts of interest exist between him and other members of the subclass. The alleged conflict concerns the mineral unit involving the well that was drilled.
Both parties offered expert testimony addressing this issue at the class certification hearing. The plaintiffs submitted the testimony of George Veazey, a petroleum engineer. Mr. Veazey testified that it did not appear that there were any losses sustained by owners of minerals whose ownership falls outside the geographic unit established by the Office of Conservation and referenced in the definition of the subclass. Any losses that affected owners of minerals outside the geographic unit would be minuscule, according to Mr. Veazey. Moreover, Mr. Veazey testified that any damage that may have occurred due to the underground blowout alleged by the plaintiffs occurred to the mineral unit at issue.
*65 Joe Battle, a petroleum geologist, was the expert witness offered by the appellants. This expert disputed Mr. Veazey's claim that the damage from the underground blowout affected the sand within the unit. Rather, Mr. Battle asserted that the damage from the underground blowout only affected an area completely below the defined boundaries of the mineral unit. Appellants claim that there is an irreconcilable conflict between the members of the class and Mr. Singleton, because each will want to claim that this lower sand lies completely under their property, thus preventing other members from sharing in any recovery for those losses.
The trial court rejected the appellants' arguments in this assertion. In his oral and written reasons for judgment, the trial judge stated that he found the plaintiffs' expert to be very impressive, while he was not very much impressed with the expert presented by the appellants. For that reason, the judge accepted the testimony of Mr. Veazey and found that Mr. Singleton was an adequate representative. We find no error in this decision.
The expert testimony presented by the plaintiff about the location of the damage and the potential for conflict among the members of the class conflicted with the testimony of the defendants' expert on those issues. If a reasonable factual basis for the trial court's finding exists, an appellate court may set aside a trial court's factual finding only if, after reviewing the record in its entirety, it determines the trial court's finding was clearly wrong. See Stobart v. State, through Department of Transportation and Development, 617 So.2d 880, 882 (La.1993). Even though an appellate court may feel its own evaluations and inferences are more reasonable than the fact finder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Stobart, 617 So.2d at 882. Where two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous. Stobart, 617 So.2d at 883.

Sufficient Interest
The appellants also challenge the ability of William Singleton, Jr. to represent the subclass, because his stake in the litigation is so insignificant that he could not possibly adequately represent the interests of the other mineral interest owners included within the subclass. The parties stipulated that Mr. Singleton owned a mineral interest in the unit. However, he has only approximately a .XXXXXXXXX share of the total interests in the mineral unit. According to the appellants this stake is too insignificant relative to other putative class members to ensure that Mr. Singleton will vigorously or adequately represent the class.
In applying Rule 23, the federal district court for the Eastern District of Louisiana rejected just such an argument. Neither the number of representative parties nor their financial interests is controlling in determining whether the plaintiffs will fairly and adequately protect the interests of their class. Thus a single plaintiff may represent the entire class, no matter how small his claim may be, if other factors indicate that he will fairly and adequately protect the interests of his class. Epstein v. Weiss, 50 F.R.D. 387, 391 (E.D.La.1970).
Mr. Singleton testified that he had a claim for loss of mineral royalties and he wished to pursue that claim through the class action litigation. He further testified that he would follow all the court's orders and would cooperate in the process by giving a deposition or appearing in court as required. We see no error in the apparent finding of the trial court that Mr. Singleton's stake in the litigation was sufficient *66 to ensure his vigorous representation of the class.

Adequacy of Class Counsel
Appellants did not challenge the adequacy of class counsel before the trial court, and they have not truly done so before this court. The appellants have raised a question about the ability of class counsel to uphold their fiduciary duty to the class while representing class members with antagonistic or conflicting claims. Since we do not find that the potential conflicts prevent the class representative from adequately representing the class, this issue is moot. The trial court found class counsel to be competent and capable of vigorously representing the class. We see no error in this decision.

CLASS DEFINITION
The appellants have also challenged the geographic definition of the "Above the ground" subclass established by the trial court, alleging that the evidence in the record does not support the definition. Article 591A(5) requires that the class be definable by objective criteria such that the court may be able to determine the res judicata effect of any judgment that may be rendered in this case. This does not necessarily mean that the definition needs to be narrower, because obviously the protection of res judicata is directly proportional to the number of possible claimants whose claims are adjudicated. It does mean, however, that the definition must be precise enough to establish which claims and which claimants will be subject to the final judgment of the court for the application of res judicata. In the case of Clement v. Occidental Chemical Corp., 97-246, p. 9 (La.App. 5th Cir.9/17/97), 699 So.2d 1110, 1114, writ denied, 97-2884 (La.1/30/98), 709 So.2d 718, the court said:
A class definition provides the framework against which the court can apply the statutory requirements in order to determine whether a class action may be maintained. The definition of the class should provide a sufficient basis upon which to determine the scope of the class and the propriety of permitting plaintiffs to represent all or a part of it. 2 H. Newburg, Class Actions, § 6.14 (3d ed.1992). The requirement that there be a class capable of definition ensures that the proposed class is not amorphous, vague or indeterminate. See In re Tetracycline Cases, 107 F.R.D. 719 (W.D.Mo.1985). A person should be able to determine readily if he or she is a member of the class. This is essential in order for there to be res judicata effect to any judgment that is rendered. Any subdivision(s) may be based upon geographical subgroupings, subgroupings by type of injury alleged, exposure, and other factors as may become apparent as a case management order is formulated, and the litigation progresses. Ford v. Murphy Oil U.S.A., 94-1218 (La.App. 4th Cir.8/28/96), 681 So.2d 401. (Emphasis added.)
A class action not properly defined or delineated would impede rather than implement the law. See Lewis v. Texaco Exploration and Production Co., Inc., 96-1458 (La.App. 1st Cir.7/30/97), 698 So.2d 1001, 1014; McCastle, 456 So.2d at 618-619.
The trial court in this matter established the geographic area of the "Above the ground" subclass as follows:
All persons and/or entities who resided in, were present in, or conducted business in the Parishes of Terrebonne, St. Mary, and/or Assumption, State of Louisiana....
A determination of the geographic area of the class is an integral part of the definition of the class. The establishment *67 of the geographic boundaries of a class must be based on evidence in the record. Hampton, 98-0430, 98-0431, 98-0432, 98-0433, 98-0434, 98-0435 at p. 6, 730 So.2d at 1094.
The evidence in this case does indicate that persons in the three parishes were potentially impacted by the blowout. The mineral unit at issue covers land in all three parishes. We also note that residents of all three parishes are among the named plaintiffs. However, there is evidence in the record that suggests no damage was done beyond a five-mile radius of the well site. There is no evidence in the record that would demonstrate that the blowout impacted the entire area of Terrebonne, St. Mary, and Assumption Parishes. Moreover, there is nothing in the record that suggests that the class of persons who have suffered loss of earnings should be limited to residents of those three parishes or a smaller area or those who were actually "present" in the defined area. It is furthermore not clear when the claimant's presence must have occurred.
From the evidence in the record, we conclude the "Above the ground" subclass definition proposed by plaintiffs and accepted by the trial court is not sufficiently precise.
It may be necessary for the trial court to take additional evidence to support a more precise definition of the subclass of individuals impacted by this incident. The court is authorized to make a final determination at any time under the provisions of La.Code Civ. P. art 592A(3)(c); however, in order to comply with the notice provisions of La.Code Civ. P. art. 592B an adequate, although not final, definition is necessary. We therefore vacate the trial court's definition of the subclass, and remand for the taking of additional evidence as necessary in order to redefine the class to include only those areas and those persons the evidence reasonably shows were impacted by the blowout. See Cotton, 96-1958, at p. 15, 691 So.2d at 769; Lailhengue v. Mobil Oil Co., 94-2114, 94-2115, 94-2116, pp. 12-13 (La.App. 4th Cir.6/7/95), 657 So.2d 542, 549.
The appellants have challenged the definability of the "Below the ground" subclass as well. This challenge is substantially based on the allegations that the members of this subclass have claims antagonistic to one another. We have already addressed that issue. The testimony indicates that some of the Thibodeaux interests object to representation by plaintiff counsel, do not wish to be represented by William Singleton, Jr., and furthermore, do not want to have their claims adjudicated in the class action. This fact cannot defeat certification or change the definition. If these claimants so choose, they have the right to opt out of the class action and to pursue their claims independently.

PREDOMINANCE OF COMMON ISSUES AND SUPERIORITY
In addition to the above requirements, the trial court must also determine that questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that the class action procedure is superior to other available methods for fair and efficient adjudication of the controversy. La.Code Civ. P. art. 591B(3).
Article 591A(2) requires that there be questions of law or fact common to the class. Paragraph B(3) of that article requires that these common questions predominate over any questions affecting only individual members. This requirement restricts class actions to those cases in which it would achieve economies of time, effort, and expense, and promote uniformity of *68 decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results. McCastle, 456 So.2d at 616.
When a common character of rights exists, a class action is superior to other available adjudicatory methods for the purpose of promoting the basic aims and goals of a procedural device: (1) implementing the substantive law at issue in the case; (2) providing judicial efficiency in carrying out the substantive law; and (3) insuring individual fairness to all parties involved. If the superiority of a class action is disputed, the trial court must inquire into the aspects of the case and decide whether these intertwined goals would be better served by some other procedural device. McCastle, 456 So.2d at 616-617.
The Louisiana Supreme Court has suggested that courts should use the factors enumerated in Rule 23(b) and the Uniform Class Actions Act in order to more effectively evaluate the. superiority of the class action in light of the above goals. See McCastle, 456 So.2d at 617; Stevens, 309 So.2d at 150-151. The 1997 amendments to the Louisiana class action articles have now codified those factors. La.Code. Civ. P. art. 591B(3); Duhe, 99-2002 at p. 18, 779 So.2d at 1082.
The non-exclusive factors are:
(a) The interest of the members of the class in individually controlling the prosecution or defense of separate actions;
(b) The extent and nature of any litigation concerning the controversy already commenced by or against members of the class;
(c) The desirability or undesirability of concentrating the litigation in the particular forum;
(d) The difficulties likely to be encountered in the management of a class action;
(e) The practical ability of individual class members to pursue their claims without class certification;
(f) The extent to which the relief plausibly demanded on behalf of or against the class, including the vindication of such public policies or legal rights as may be implicated, justifies the costs and burdens of class litigation[.]
La.Code Civ. P. art. 591B(3).
The factual basis for this lawsuit is that the well sustained a blowout due to the negligence or other fault of the defendants. The plaintiffs allege that as a result of this blowout they sustained damages, including personal injury, lost wages or income, property damage, lost mineral royalties, forced eviction, and inconvenience. The liability of the defendants is the central issue, which is obviously common to all of the claimants. Moreover, this issue of liability predominates over any questions important to only individual members of the class, such as the type and extent of their damages. Although these individual issues do exist, we find no error in the trial court's finding that questions of law or fact common to the members of the entire class predominate over those affecting only individual members.

Implementing Substantive Law
Class actions may implement substantive law by opening courts to claims not ordinarily litigated. This enables courts to examine the full implications of recognizing rights or remedies and to determine what outcome in litigation would best serve the policies underlying the causes of action. Boudreaux, 96-0137 at p. 9, 690 So.2d at 121. Class action procedures are fair because courts are more likely to see both the significance of the claims of a plaintiff and the consequences *69 of imposing liability on the defendant, and thus are more likely to arrive at a substantially just conclusion. McCastle, 456 So.2d at 618. Moreover, the interests of absentees, who may be affected by the litigation regardless of its class nature, are given representation in the litigation process through class action procedures, and are thus more likely to be given their due. Boudreaux, 96-0137 at p. 9, 690 So.2d at 121.
In some instances, however, a class action may tend to skew, rather than implement faithfully, the policy underlying a cause of action. The courts must therefore determine whether implementation of substantive law is advanced or deterred by a class action. McCastle, 456 So.2d at 618-619; Boudreaux, 96-0137 at p. 9, 690 So.2d at 121.
Many of the plaintiffs' claims in this matter appear to be so small that suits would not otherwise be brought, were the class action procedure not available. Obviously, the anticipated expenses of this kind of claim due to the need for expert testimony would make it virtually impossible for many of the plaintiffs to seek a judicial remedy for their claims. Because these claims do appear to be small, it is probable that a class action would open the courts to many claims that would not ordinarily be prosecuted economically as individual actions. McCastle, 456 So.2d at 619.
Furthermore, allowing these claims to proceed as a class action serves to effectuate the public policy underlying a tort action, which is to protect or make whole a party harmed through the fault of another. Boudreaux, 96-0137 at p. 9, 690 So.2d at 121. This legislative policy will not be skewed or distorted by an exaggerated deterrent effect, because the court is more likely to see the significance of the individual claims of the plaintiffs and the consequences of imposing liability on the defendants for the results of their activities. Thus, the court is more likely to arrive at a substantially just conclusion. McCastle, 456 So.2d at 619.

Judicial Economy
The second fundamental objective of a class action is to achieve economy of time, effort and expense. Boudreaux, 96-0137 at p. 10, 690 So.2d at 122. There are several hundred potential claimants in this matter who fit within the two proposed subclasses. The court would be greatly burdened by separate suits or by the joinder or intervention of interested parties in separately brought actions. Class action was designed to handle this type of litigation, while still preserving the integrity of the proceedings for all parties involved. Dumas, 25,632 at p. 11, 635 So.2d at 452. Class action is clearly the most efficient procedural vehicle under these facts.
Furthermore, judicial efficiency will be better served by a class action in this case because of the procedural devices available to the court that help with the manageability of the lawsuit. By certifying this case as a class action, the trial court may employ the provisions of articles 592A(3)(c) and 594 of the Louisiana Code of Civil Procedure, which give the trial court discretion to amend or recall certification; enlarge, restrict or redefine the constituency of the class or issues; adopt a management plan for the litigation, including subdividing the action or separating the issues therein raised, and holding separate trials of separate issues. See Dumas, 25,632 at p. 11, 635 So.2d at 452. In spite of the additional burdens and responsibilities which the class action places on the court, any error to be made in maintaining a class action should be made in favor of upholding a class action because it is always subject to modification should new developments during the course of the trial *70 so require. McCastle, 456 So.2d at 620. Such modifications are not possible in ordinary proceedings, except with the consent of all the parties. Lailhengue, 94-2114 at p. 11, 657 So.2d at 548.

Fairness to the Parties
The third objective of the class action is to promote uniformity of decision to similarly situated persons, without sacrificing procedural fairness or causing undesirable results. In order to determine whether the class action will be fair to the parties, the court should consider the precedent value of a first decision in separately filed actions, the injustice which can result from inconsistent judgments in separate actions, and the size of the claims of absent members. McCastle, 456 So.2d at 621; Boudreaux, 96-0137 at p. 11, 690 So.2d at 122.
The record suggests that at least one other suit may have been filed by persons or entities affected by the blowout. Moreover, some potential claimants may have decided not to file because this action was pending. Were multiple suits filed, some cases would likely be tried to juries, while others would not. Some of the issues are complex and would require considerable expert testimony. From one case to the next, the qualifications and opinions of those experts could differ. Additionally, plaintiffs' claims, although based on common issues of law, have enough unique characteristics so that the possibility of inconsistent results among these similarly damaged claimants is high. In light of the above discussion, we find the trial court did not err in finding a class action is the fairest method for adjudicating these claims. See Boudreaux, 96-0137 at p. 11, 690 So.2d at 122.
In this case, the trial court gave the parties the opportunity to present evidence at a class certification hearing. It heard the lay and expert testimony presented by the parties and was consequently in the best position to evaluate the factual circumstances of this case and the three fundamental goals of a class action procedure. The trial court found that a class action was the superior method by which to proceed. We find no manifest error in these findings, nor do we find the decision to certify the class to be an abuse of discretion.

CONCLUSION
Accordingly, for the reasons assigned, we affirm that part of the trial court judgment which grants plaintiffs' motion for class certification. However, we vacate the trial court's definition of the "above-the-ground" subclass, and remand this case to the trial court for further proceedings consistent herewith. All costs of this appeal are assessed to the defendants-appellants, The Meridian Resource & Exploration Company, Texas Meridian Production Corporation, The Meridian Resource Corporation, The Meridian Production Corporation, Burlington Resources Oil & Gas Company, Northfield Insurance Company, Lumbermen's Mutual Casualty Company, Commercial Underwriters Insurance Company, Kurt D. Byth, Petroleum Professionals International, Inc., George Smith and George Craig.
AFFIRMED IN PART; VACATED IN PART; AND REMANDED.
NOTES
[1] Judge Ian W. Claiborne, retired, is serving as judge pro tempore by special assignment of the Louisiana Supreme Court.
[2] In his written reasons for judgment, the trial judge mistakenly stated that the well was located in St. Mary Parish. However, at the hearing, the parties stipulated that the well was located in Assumption Parish.
[3] The original petition named Mandalay Properties, L.L.C. as the only plaintiff. Subsequent amendments were filed naming Ernest and Evelyn Singleton, William Singleton, Jr., Perry Smith, Brenda Henderson, Individually and on behalf of her minor children, Mikila and Keith Henderson, Anthony J. Guarisco, Jr., Marilyn G. Vinson, and Terry D. Guarisco, Sr. as additional plaintiffs and prospective class representatives.
[4] La.Code Civ. P. art. 592D authorizes the creation of subclasses.
[5] Singleton v. Northfield Insurance Company, 00-2439 (La.App. 1st Cir.11/15/00) (unpublished writ action).
[6] Prior to the 1997 amendment of article 591, this element required a showing that the claims of the class representatives were typical of the claims of the absent class members. See Cotton, 96-1958 at p. 16, 691 So.2d at 770. Typicality of claims is now a separate requirement pursuant to La.Code Civ. P. art. 591A(3).