965 So.2d 438 (2007)
STATE of Louisiana
v.
FORD MOTOR COMPANY, William Clay Ford, Jr., Allan Gilmour, Nick Scheele, Bill Hood Ford, L.L.C., and Hixon Autoplex of Alexandria, Inc. d/b/a Hixson Autoplex and Hixson Autoplex of Alexandria.
No. 2006 CA 1810.
Court of Appeal of Louisiana, First Circuit.
June 27, 2007.
*440 Tony Clayton, Port Allen, Ben D. Beychok, Baton Rouge, Charles C. Foti, Jr., Baton Rouge, Counsel for Plaintiff/Appellee State of Louisiana.
Allen V. Davis, Michael T. Pulaski, Charles E. Sutton, Jr., Hillard F. Kelly, III, Covington, Brian C. Anderson, William R. Nifong, Washington, D.C., Counsel for Defendant/Appellant Ford Motor Co., Hixson Autoplex of Alexandria, Inc.
Paul L. Billingsley, Hammond, Counsel for Defendant/Appellant Bill Hood Ford, L.L.C.
Before: CARTER, C.J., WHIPPLE, KUHN, DOWNING and MCDONALD, JJ.
MCDONALD, J.
The petition in the matter before us was filed by the plaintiff, the State of Louisiana (State), in December 2003, for injunctive relief, declaratory relief and damages pursuant to Louisiana redhibition law (La. C.C. art. 2520 et seq.), Unfair Trade Practices Act (La. R.S. 51:1401 et seq.), the Procurement Code (La. R.S. 39:1679) and article 2315 of the Louisiana Civil Code for intentional interference with contracts. The defendants are the Ford Motor Company, some individual representatives of Ford, and two Ford dealerships. The allegations of the 71[1] paragraph petition on which this opinion is focused are that the Ford Crown Victoria Police Interceptor vehicle was marketed as a vehicle specially designed to be used by law enforcement personnel, but that it contained a hidden defect causing an increased risk of fuel leakage and combustion in rear-end impact collisions, which entitles petitioners to a reduction in the purchase price and other damages.
After removal to federal court and remand to the state court, in July 2004, a first amended and supplemental petition was filed seeking to represent a class of "all governmental, parish, municipal, police and sheriff departments, law enforcement districts and other political subdivisions within the State of Louisiana who have purchased and own Ford Crown Victoria Police Interceptors since 1992 that were provided to law enforcement for use as a law enforcement vehicle." Paragraph LXVI of the amended petition sought to exclude from this class "any persons or entities who have an action for damages for personal injury or death arising out of post-collision fuel fed fires in the Ford Crown Victoria Police Interceptor."
*441 The amended petition reiterated the claim of unfair trade practices and sought damages pursuant to La. R.S. 51:1401 et seq.; and reiterated the claims of violation of the Louisiana Procurement Code and intentional interference with contract. The plaintiff sought declaratory and injunctive relief as well as class certification. Following a hearing, the trial court denied the request for injunctive relief by judgment rendered September 23, 2004, which was not appealed.
In November 2004, the trial court heard argument on the plaintiff's motion for class certification. Class certification was granted, and judgment was signed December 15, 2004, defining the class as "All parishes, municipalities, police and sheriff departments, law enforcement districts and other political subdivisions within the State of Louisiana who have purchased, leased or otherwise acquired Ford Crown Victoria Police Interceptors since the 1992 model year for use as law enforcement vehicles." The State of Louisiana on behalf of the Louisiana State Police was named as the class representative. This appeal was timely filed by the defendants, collectively designated as Ford.[2]
Ford asserts that the court erred: (1) in certifying a class in which questions of law or fact common to the members of the class do not predominate over questions affecting only individual class members; (2) in certifying a class in which the claims of the representative are not typical of the claims of the class; (3) in certifying a class in which the representative party will not fairly and adequately protect the interest of the class; and (4) in certifying a class in which a class action is not superior to other available methods for the fair and efficient adjudication of the controversy.
The trial court has much discretion in deciding whether a suit should be certified as a class action. The factual findings upon which a class action certification is based should be reviewed on appeal by the manifest error (clearly wrong) standard. After the trial court makes its determination of fact, it exercises its discretion to certify the class or not. This discretionary judgment must be reviewed on appeal by the abuse of discretion standard. Boudreaux v. State, DOTD, 96-0137, p. 4 (La.App. 1st Cir.2/14/97), 690 So.2d 114, 118.
The prerequisites for maintaining a class action are provided in La. C.C.P. art. 591, as follows:
A. One or more members of a class may sue or be sued as representative parties on behalf of all, only if:
(1) The class is so numerous that joinder of all members is impracticable.
(2) There are questions of law or fact common to the class.
(3) The claims or defenses of the representative parties are typical of the claims or defenses of the class.
(4) The representative parties will fairly and adequately protect the interests of the class.
(5) The class is or may be defined objectively in terms of ascertainable criteria, such that the court may determine the constituency of the class for purposes of the conclusiveness of any judgment that may be rendered in the case.
B. An action may be maintained as a class action only if all of the prerequisites of Paragraph A of this Article are satisfied, and in addition:
(1) The prosecution of separate actions by or against individual *442 members of the class would create a risk of:
(a) Inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
(b) Adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or
(2) The party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
(3) The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to these findings include:
(a) The interest of the members of the class in individually controlling the prosecution or defense of separate actions;
(b) The extent and nature of any litigation concerning the controversy already commenced by or against members of the class;
(c) The desirability or undesirability of concentrating the litigation in the particular forum;
(d) The difficulties likely to be encountered in the management of a class action;
(e) The practical ability of individual class members to pursue their claims without class certification;
(f) The extent to which the relief plausibly demanded on behalf of or against the class, including the vindication of such public policies or legal rights as may be implicated, justifies the costs and burdens of class litigation; or
(4) The parties to a settlement request certification under Subparagraph B(3) for purposes of settlement, even though the requirements of Subparagraph B(3) might not otherwise be met.
C. Certification shall not be for the purpose of adjudicating claims or defenses dependent for their resolution on proof individual to a member of the class. However, following certification, the court shall retain jurisdiction over claims or defenses dependent for their resolution on proof individual to a member of the class.
The requirements of Paragraph A of article 591 are referred to as the elements of numerosity, commonality, typicality, adequate representation, and objectivity (definability), and all must be present to maintain a class action. Boyd v. Allied Signal, XXXX-XXXX, 1842, 1843, p. 10 (La.App. 1st Cir 12/30/04), 898 So.2d 450, 457; writ denied XXXX-XXXX (La.4/1/05), 897 So.2d 606. The burden of proving the necessary elements is on the party seeking to maintain the class action. Conclusory allegations of a pleading alone are insufficient to establish the existence of a class. *443 Carr v. GAF, Inc., 97-0838R, p. 5 (La.App. 1st Cir.4/8/98), 711 So.2d 802, 805.
The issue before us on appeal considered broadly is whether the lawsuit should have been certified as a class action. In our initial review of this record, we were disturbed by a seeming lack of evidence on the issue of numerosity. The numerosity requirement is not met simply by alleging a large number of potential claimants. Lewis v. Texaco Exploration and Production Co., Inc., 96-1458 p. 11 (La.App. 1st Cir.7/30/97), 698 So.2d 1001, 1012. At the hearing on this matter no evidence was introduced concerning the numbers of agencies using this vehicle. The statement by the trial court "that based off [sic] the number of entities that have this vehicle . . ." is not based on any evidence in the record. The record does confirm that at least two law enforcement agencies had filed suit and subsequently had it dismissed. In fact, the record contains no evidence whatsoever as to the numbers of potential plaintiffs. The only such reference is found in the argument of counsel, both at the trial level and at the appellate level. Therefore, on the record before us, we find that the plaintiff has failed to establish an element necessary to establish entitlement to class certification, numerosity, and the decision of the trial court cannot be affirmed.
However, for the sake of judicial efficiency, we will also consider other assignment of errors made by appellants. Ford asserts that the State has not met its burden of proving commonality, typicality and adequate representation. Under Louisiana law, there must be a "common character" among the rights of the representatives and the absent members of the class in order to make class action appropriate. To satisfy this element, plaintiffs must establish that questions of law or fact common to the members of the class predominate over any questions affecting only individual members. Boudreaux v. State DOTD, 690 So.2d at 120. Additionally, the "common character" requirement restricts class actions to those cases in which it would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results. Id.; McCastle v. Rollins Environmental Services of La., Inc., 456 So.2d at 616 (La.1984). Thus, the commonality requirement involves a two-step inquiry: (1) a determination that common issues predominate over questions affecting only individual members, and (2) a determination that the class action procedure is superior to other procedural mechanisms. Johnson v. Orleans Parish School Bd., XXXX-XXXX, 0826, 0827, 0828, 0828, p. 14 (La.App. 4th Cir.6/27/01), 790 So.2d 734, 744 and cases cited therein.
Ford maintains that the issues involved in the plaintiff's claims are claimant-specific in nature, are nearly infinite in variation, and require different packages of evidence with respect to each separate proposed class member. Among the variations in the issues cited by Ford are: representations made to each class member, reasons influencing each member's decision to acquire the vehicle, each member's knowledge of the alleged defect over time, vehicle design changes and post-sale retrofits, the various purposes for which the vehicles are used, and the various sources of puncture, ignition and fire.
Some common issues cited by the State are whether the Crown Victoria Police Interceptor (CVPI) has a redhibitory defect and whether members of the proposed class are entitled to a reduction in the purchase price of the CVPI because of *444 the redhibitory defect.[3] While arguably these issues are important and common to all members of the proposed class, the existence of a common question of law or fact does not by itself justify a class action as involving a common character of the right to be enforced even though the parties are too numerous to be joined practicably. Banks v. New York Life Ins. Co., 98-0551 p. 5 (La.7/2/99), 737 So.2d 1275, 1280.
The majority of the evidence submitted by the plaintiffs chronicle law suits and documentation from other law enforcement personnel regarding increased safety risks to police officers involved in rear-impact collisions in the CVPI dating back to 1997.[4] A Louisiana law enforcement officer was killed in a crash and fire in a CVPI in May 1998. Law enforcement officers in Arizona and in Texas were killed in crashes involving the CVPI, and law suits were filed alleging liability on the part of Ford. The State of Florida, Department of Highway Safety and Motor Vehicles addressed a letter to the Police Vehicle Engineering Division of Ford in 1999, outlining its concerns for the safety of law enforcement officers driving the CVPI.
The evidence (deposition of Michael Blackmer) indicates that Ford's initial response was to deny that the CVPI had a design defect, and refuse responsibility for notifying owners of any potential problems or paying to make changes. However, Ford's position changed through the years; design modifications were made, and by 2002 Ford was offering an upgrade kit that was designed to "retrofit" existing CVPI vehicles. In the 2003 year model, substantial design changes were made in an attempt to eliminate the perceived danger, which in addition to the allegations of numerous lawsuits, had been the subject of nationally broadcast television news programs.[5]
While the only issue at the certification hearing is the appropriateness of the procedural device, the possibility that the defendants will assert affirmative defenses such as comparative fault and prescription should be considered. Mathews v. Hixson Bros., Inc., 02-124 (La.App. 3rd Cir 7/31/02), 831 So.2d 995, 1000. As noted by the trial court, prescription is an issue in this case. Plaintiffs are claiming as members of the class, purchasers of the CVPI since model year 1992. Louisiana Civil Code art. 2534 provides in pertinent part that the "action for redhibition against a seller who knew, or is presumed to have known (the manufacturer), of the defect in the thing sold prescribes in one year from the day the defect was discovered by the buyer." There is absolutely no evidence, or reason to believe under the facts in this case, that the issue of prescription can be resolved on behalf of all plaintiffs by inquiry as to the class representative only. Each individual potential plaintiff may have different issues regarding prescription.
Further, an essential requirement to maintain a suit in redhibition is that the *445 complained of defect is hidden, and indeed, plaintiff's petition alleges that the defect is hidden. Given the widespread dissemination of information concerning problems with the CVPI, and considering the probability of notice to Louisiana law enforcement personnel occasioned by the aforementioned 1998 death, the knowledge of the alleged defect possessed by each member of the putative class, and when it was discovered, will be raised as a defense by Ford and will have to be determined with regard to each individual class member on an individual basis.
The plaintiff also alleges that the hidden defects increase the risk of fuel leaks and fuel fed fires "under certain circumstances for which the CVPI was expressly marketed and sold." Therefore, it will be necessary to establish that the purposes for which the vehicles were acquired and the use made of them by the various class members, conform to the "certain circumstances" under which the risk is increased. We find no evidence in the record addressing this issue. This also implicates the element of typicality.
A trial court's decision to certify a class action is a two-step process. The trial court must first determine whether a factual basis exists for class action certification. If the trial court finds that a factual basis exists for certification, it then must exercise its discretion in deciding whether to certify the class. Boyd v. Allied Signal, 898 So.2d at 456. All of the elements of numerosity, commonality, typicality adequate representation and objectivity (definability) must be present to maintain a class action. La. C.C.P. art. 591(B), Boyd, 898 So.2d at 457.
Even if the plaintiff has met its burden regarding the elements of numerosity, commonality, typicality, adequate representation, and objectivity, it is then necessary for the court to evaluate whether the class action is superior to other available methods for the fair and efficient adjudication of the controversy. Mathews, 831 So.2d at 1004. Judicial inquiry into the suitability of a lawsuit to be certified as a class action does not end with the establishment of the elements required by paragraph A of La. C.C.P. art. 591; the trial court must evaluate the requisite factors of paragraph B, which generally address the issues of fairness and efficiency. In determining whether a class action in a particular case will promote fairness and efficiency, the trial court must actively inquire into every aspect of the case and should not hesitate to require showing beyond the pleadings. McCastle, 456 So.2d at 616.
The trial court made no factual findings whatsoever in this matter. The court noted the factors provided in paragraph A of La. C.C.P. art. 591 that are requisites of class certification and said, "The state has alleged a number of agencies that have this particular vehicle. [The] court feels that based off the number of entities that have this vehicle, and the commonality and typicality of the issue in terms of the Crown Victoria Police Interceptor, and that the state would fairly represent the entire class, the court is going to grant the class certification of this particular suit." There is no evidence that the trial court was aware of or considered whether the lawsuit is suitable for class certification in conformance with any of the factors contained in paragraph B of La. C.C.P. art. 591.
We do not agree with Ford that the issues underlying plaintiff's claims are "nearly infinite in number." However, on the record before us, and without any factual findings by the trial court, we are unable to conclude that the issues of law and fact common to class members predominate over individual issues. We hold *446 that the plaintiff has not met its burden of establishing the elements necessary to maintain a suit as a class action pursuant to La. C.C.P. art. 591. Therefore, the certification of this suit as a class action is reversed, and the matter is remanded to the district court. Costs in the amount of $2,296.04 are assessed to the State, Department of Public Safety and Corrections.
REVERSED AND REMANDED.
KUHN, J., concurs and assigns reasons.
WHIPPLE, J., dissents and assigns reasons.
DOWNING, J., dissents for the reasons assigned by WHIPPLE, J.
CARTER, J., concurs.
WHIPPLE, J., dissenting.
Appellants ("Ford")[1] appeal a judgment certifying the instant suit relating to the Ford Crown Victoria Police Interceptor ("CVPI") as a class action.[2] A trial court's decision to certify a class merits great discretion and should be affirmed on appeal absent manifest error. Robichaux v. State ex rel. Dept. of Health and Hospitals, 06-0437 (La.App. 1st Cir.12/28/06), 952 So.2d 27, 33.
In its assignments of error, Ford contends that the trial court erred in finding that the plaintiff (the State of Louisiana) demonstrated conformity with all of the class certification requirements of LSA-C.C.P. art. 591. Specifically, Ford avers that the State did not prove the elements of commonality, typicality, that the representative party will fairly and adequately represent the class, or that the class action is superior to other methods of adjudicating the controversy.
The test for commonality is not a demanding one. Duhe v. Texaco, Inc., 99-2002 (La.App. 3rd Cir.2/7/01), 779 So.2d 1070, 1078. Commonality requires only that there be at least one issue, the resolution of which will affect all or a significant number of the putative class members. Duhe, 779 So.2d at 1078. The crux of this case is whether the Ford-manufactured CVPI vehicles contain a redhibitory defect. This question will require common proof, and when answered as to one class member, will be answered as to all. I do not find that the individual class member's use of the vehicle, or even modifications made to the vehicle, defeat commonality, nor do I find that the question of individuals' pre-purchase knowledge, which may rebut the redhibition claims, defeats commonality. Compare, West v. G & H See Co., 01-1453 (La.App. 3rd Cir.8.28/02), 832 So.2d 274, 287.[3] The primary issue is whether the CVPI is redhibitorily defective and calls for common questions and common proof. Thus, the test for commonality is satisfied.
Likewise, the test for typicality is not demanding. Davis, 844 So.2d at 256. *447 Here, the class members' claims arise out of the purchase of Ford CVPI vehicles and are based on the legal theory of redhibition.[4] The damages suffered by the class representative are the same type as those of other class members. Thus, the test for typicality is satisfied.
After thorough review, I find no manifest error in the trial court's conclusions that the representative party will fairly and adequately protect the interest of the class and that the class action is superior to other available methods for fair and efficient adjudication of the controversy. This case concerns a single allegedly defective product, the Ford CVPI, and although individual questions will certainly arise, I find that common questions predominate. Moreover, I am mindful that any doubt as to certification should be resolved in favor of certification. West, 832 So.2d at 292.
Considering the foregoing, I find no manifest error or abuse of discretion committed by the trial court, and conclude that this case is proper for class certification. I note here that the State moved for class certification on the issues of defendant's liability for damages in redhibition and breach of contract/warrant only. The trial court's judgment states that the State's motion to certify is granted. Thus, I would amend the judgment to clarify that the class is certified as to these issues only and as amended, would affirm the trial court's judgment, by memorandum opinion issued in compliance with URCA Rule 2-16.1 B.
Accordingly, I respectfully dissent.
KUHN, J., concurring.
I concur in the conclusion that the plaintiff failed to establish the numerosity element. Nothing in the record sufficiently identifies a definable group of aggrieved persons so as to satisfy the numerosity requirement for certification of a class action. Simply alleging that there are a large number of potential claimants is insufficient. Lewis v. Texaco Exploration and Production Co., Inc., 96-1458 (La. App. 1st Cir.7/30/97), 698 So.2d 1001, 1012.
Although the issue at a class certification hearing is whether the class action is procedurally preferable  not whether any of the plaintiffs will be successful in urging the merits of their claims  because the primary opinion has chosen to consider other assignments of error raised by defendants, I point out that under the facts of this case, it appears a redhibition claim is incompatible with a class certification. A redhibition claim involves subjective issues of individual knowledge and reliance. Thus, to receive redhibitory relief, plaintiff-by-plaintiff adjudication of liability and defense issues will be necessary. If it is recovery under the Louisiana Products Liability Act for a design defect that plaintiff seeks, specific allegations to justify such relief must be made.
NOTES
[1] The original 64-paragraph petition was amended. This opinion is based on allegations put forth by plaintiffs in both the original and the amended petition.
[2] The individual defendants did not appeal.
[3] We do not address at this point whether the exclusivity of the Louisiana Products Liability Act would prohibit maintaining this allegation of design defect as a suit in redhibition.
[4] Among the evidence introduced by the plaintiff was the deposition of Helen Pitreukis, a Ford representative, taken on February 25, 1992, and concerns similar issues with respect to the 1986 Crown Victoria. We do not see the relevance of that deposition to this lawsuit involving vehicles purchased after 1992.
[5] Iberville Parish Sheriff John Brent Allain testified in a deposition taken in May 2003, that he had seen a television broadcast featuring concerns over rear-end collisions in the CVPI.
[1] Appellants are Ford Motor Company, Hixson Autoplex of Alexandria, Inc., and Bill Hood Ford, L.L.C. The other named defendants are not a party to this appeal.
[2] A detailed statement of the factual and procedural history of this suit, as well as the applicable law and standard review, is set forth in this court's previous opinion, State v. Ford, 05-1127 (La.App. 1st Cir.5/31/06), 930 So.2d 1244 (unpublished).
[3] See also Mire v. Eatelcorp, Inc., 02-1705 (La.App. 1 Cir. 5/9/03), 849 So.2d 608, 614 (stating that "the inquiry under a redhibition claim does not involve the buyer's subjective knowledge or reliance, but rather is an objective inquiry into the deficiency and whether it diminishes the product's value or renders it so inconvenient that the reasonable buyer would not have purchased it had he known of the deficiency.")
[4] In support of its contention that the claims of other class members will be based on other legal theories, Ford directs our attention to petitions filed in other class action lawsuits. However, Ford admits that those petitions do not form part of the record before us on appeal. We cannot take judicial notice of those petitions and, as evidence outside the appellate record, those petitions cannot be considered herein. See LSA-C.E. art. 201.