TODD EVERETT BAUMANN
v.
D&J FILL, INC., DUANE RODOSTA, ACE ENTERPRISES, CARLTON R. JONES, AND XYZ INSURANCE COMPANY
No. 2007 CA 1141.
Court of Appeal of Louisiana, First Circuit.
Judgment Rendered: February 8, 2008
Not Designated for Publication
STEPHEN M. IRVING, RICHARD J. DODSON, KENNETH H. HOOKS, III, Baton Rouge, La, and VINCENT J. SOTILE, JR. Prairieville, La, Attorneys for Plaintiff-Appellee Todd Everett Baumann.
ANDRÉ J. MOULEDOUX, C. WILLIAM EMORY, New Orleans, La, Attorneys for Defendants-Appellants, D&J Fill, Inc., and Duane Rodosta.
WILLIAM T. LOWREY, JR., BARBARA IRWIN MESSINA, Attorneys for Defendant-Appellee, Baton Rouge, La, D&J Fill, Inc.
DONALD R. SMITH, DENNIS A. PENNINGTON, Attorneys for Defendants-Appellees, Ace Enterprises, Inc. and Carlton Jones.
JENNIFER W. WALL, New Orleans, La, and ERIN WILDER-DOOMES, Baton Rouge, La, Attorneys for Defendant-Appellee, Trinity Universal Ins. Co. of Kansas.
CHARLES J. DUHE, JR., BRENT M. STEIRER, PAULA M. WELLONS, Baton Rouge, La, Attorneys for Defendant-Appellee, Everest Indemnity Ins. Co.
Before: CARTER, C.J., PETTIGREW and WELCH, JJ.
WELCH, J.
This is an appeal by defendants D&J Fill, Inc. and its owner, Duane Rodosta (collectively referred to as "D&J") challenging the decision of the trial court to certify a class action in this nuisance litigation. We affirm that portion of the judgment granting the motion for class certification, but vacate one portion of the class definition and affirm as amended.

BACKGROUND
On February 8, 2006, plaintiff, Todd Everett Baumann, a resident of Prairieville in Ascension Parish, Louisiana, filed this class action lawsuit against D&J and its insurer. D&J operates a Type III solid waste facility that takes in construction and demolition material in Prairieville. The petition also named as defendants Ace Enterprises, Inc., which disposed of solid waste materials at the D&J facility, and its owner, Carlton Jones.[1] Plaintiff averred that the waste transportation, handling, and disposal activities of the defendants resulted in or contributed to the release of noxious and toxic substances from the D&J site that migrated from the facility, to which plaintiff and other persons in the vicinity of the facility were exposed, resulting in their damages. The petition alleges that the conduct constitutes a continuing trespass and nuisance. The petition further charges that plaintiff and others similarly situation suffered from eye and nasal irritation, headaches, nausea, general discomfort, emotional problems, as well as property damage and diminished property values as a result of their exposure to the odors and fumes emitting from the D&J site.
Plaintiff's proposed class action consists of persons or entities located or residing in, owning or leasing places of business property in, operating business in, and/or persons who are physically present within an area having a radius of two miles from the D&J facility, and who had been exposed to and suffered damages as a result of the transportation, handling, storage, and disposal of noxious and toxic wastes, substances and materials to and at the D&J site since July 1, 2005. Plaintiff asserted that there were seven issues common to all class members: (1) whether the defendants knew or should have known that the D&J site was not safe and was inadequate for the purpose of handling, storage, and disposal of noxious and toxic waste substances and materials; (2) whether the defendants improperly transported, stored, handled, and disposed of noxious and toxic waste substances and materials; (3) whether the defendants are strictly or absolutely liable for their conduct; (4) whether the defendants were negligent; (5) whether the defendants acted in a timely manner to prevent plaintiffs damages; (6) whether the noxious and toxic materials, substances and waste has polluted plaintiffs air and property, and air and property in the class area; and (7) whether the plaintiffs property suffered a diminution of value.
Plaintiff filed amending petitions to set forth certain dates on which the D&J site emitted an odor that caused serious and material discomfort to the purported class members. In a fourth amending petition, plaintiff alleged that there were subterranean fires at the D&J facility caused by spontaneous combustion, which he averred caused most, if not all, of the incidents in which complaints of fumes and odors from the D&J facility were made on the dates set forth in the petitions.
In support of its motion for class certification, plaintiff introduced records of the Louisiana Department of Environmental Quality containing various citizen complaints lodged by Prairieville residents of odors from September 2005 through March of 2006. The complaints lists the callers' name and address and identify the primary odors detected as chemical, sulfur, sewerage, or burning type smells. The exhibits also include records of inspections conducted at the D&J facility in response to citizen complaints of odors in the area. During some of the inspections, odors were detected at the facility, and smoke was observed emitting from numerous areas at the landfill. Additionally, plaintiff introduced D&J's 2006 log records setting forth the dates on which smoke was observed at the landfill by D&J personnel.
At the hearing on the motion for certification, two witnesses, plaintiff and area resident Debra Henderson testified. Plaintiff testified that he lives approximately one-fourth to one-half of a mile from the D&J facility, in Spanish Oaks, a subdivision with about 75 homes. Through his testimony, it was demonstrated that in addition to Spanish Oaks, there are other subdivisions near the facility including Fountain Hill, Bluff Oaks, Lakes at Manchac, and Seven Oaks. Plaintiff attested that he first became aware of odors at his home in October of 2005, which he described as a "gunpowder" type smell. He stated that he also smelled the same gunpowder smell outside his church on Christmas Eve on one occasion, which was depicted on the map as being located between his subdivision and Seven Oaks. Plaintiff stated that the last time he smelled any odors was in March or April of 2006. He acknowledged that when he did smell any odors, it could last for one day or as long as a week. He testified that he desired to be appointed as class representative to seek an injunction on behalf of the class members to prevent emissions of fumes and odors at the D&J facility, and to seek damages for fumes and odors emitted from the site.
Debra Henderson, who lives on Bluff Road, several hundred yards from the facility, attested that she smelled odors so strong in October of 2005, that she was awoken from her sleep. She described the odor as a "chemical," "rotten egg" smell. She acknowledged that she would like to participate in a class action lawsuit against the facility as a member of the class.
Additionally, plaintiff offered the depositions of six area residents. Plaintiff requested at the hearing that one of the deponents, Jack Garon, be named as a class representative. Mr. Garon, who resides in Bluff Oaks, a subdivision containing about 50 homes, is the president of the homeowner's association for that subdivision. His home is located approximately 500 yards from the D&J facility. Mr. Garon testified that between September of 2005 and the present, he has detected odors approximately twenty-four times. He described the odor as a "rotten egg" type smell. Mr. Garon acknowledged that he had no physical effects from the odors, but experienced inconvenience and awoke from sleep because of them. He stated that his wife experienced headaches and nausea because of the odors, which also caused a decrease in the value of his property. Mr. Garon also attested that he had been contacted on numerous occasions by at least twelve of his neighbors complaining of odors that wake them in the middle of the night, make them nauseous, and cause headaches. Mr. Garon stated that he has called law enforcement agencies on his behalf and on behalf of the neighbors in the homeowner's association to complain of the odors. He also testified that in November or December of 2005, he visited the D&J site in response to complaints of odors from his neighbors and observed fires at the facility.
Brian Vandreumel, who lives in Manchac Place, a subdivision with approximately 100 homes, estimated his home to be located one to two miles from the D&J facility. He stated that in the year 2006, he smelled an odor like natural gas on three or four occasions, and that it was so strong on one occasion that he called the fire department to report a gas leak. He further described the odor as a sulphur, garbage-like smell. He acknowledged that he experienced no physical effects from the odors and that his family was not prevented from conducting normal activities because of the odors. However, he stated, he was afraid there would be an explosion and felt the value of his home was adversely affected by the presence of the odors. Mr. Vandreumel added that the morning of the hearing, he spoke with a co-employee, who told them that she detected odors while driving on Interstate-10 in the vicinity of the facility.
Gary Golden, a resident of Spanish Oaks Subdivision, lives approximately one-half of a mile from the D&J facility. He stated that he first detected odors near his home in 2004, and that the strongest odors he encountered were present in the summer of 2006, all of which had a "sulphur-based" smell. During that time frame, Mr. Golden testified, the odors were present on a weekly basis. He estimated that from September to October of 2006, the odors were present three to four times per month. Mr. Golden complained to DEQ about the odors on two occasions. He also went to the D&J site to dispose of building materials on two occasions, and attested that he saw smoke at the facility. Mr. Golden testified that he has experienced no health problems as a result of the odors and never stopped doing his normal activities because of the odors, but is concerned the odors may constitute a health hazard.
Bluff Oaks resident Scott Saporito testified that he first noticed odors at his home in November through December of 2005, and again in March or April of 2006, two or three days per week for every week in that tune frame. He stated that his throat burned when he smelled the odors and that his wife experienced nausea.
Dr. Joseph Bowles, a Bluff Oaks resident whose property borders the D&J facility, moved into his home in February of 2006. He testified that after moving in, he encountered a smell described as a "burnt chemical odor" at least thirty times. This odor, Dr. Bowles claimed, woke him up at night and interrupted his outdoor activities on about twenty occasions. Dr. Bowles stated that he experienced physical effects from the odors including nausea, burning in his nose and throat, and a worsening of his epilepsy condition brought on by stress. He also felt the odors caused his property value to diminish. Dr. Bowles revealed that he made complaints regarding the odors to a hotline and to DEQ.
Lastly, Wayne Henderson, who lives on Bluff Road, approximately two hundred yards from the D&J landfill, stated that he first began noticing odors at his home in 1996, but that in 2005 and 2006, the odors intensified. He described the odor as a chemical, rotten egg, garbage, burnt-type smell, sometimes lasting three or four days. From November of 2005 to the present, Mr. Henderson made five reports of odors from the D&J facility to DEQ, and his wife lodged six complaints. In 2006, Mr. Henderson hired an attorney and kept a calendar of the dates on which he or his wife encountered odors throughout the entire year. Mr. Henderson testified that the odors made him and his wife nauseated, and triggered his wife's migraine headaches. He also felt that his property value had been adversely affected by the odors from the D&J facility.
The trial court granted plaintiff's motion to certify the class, identifying the class members as follows:
(1) All persons maintaining a place of business or residing within the geographic boundary indicated on the map introduced into evidence at the certification hearing between February 1, 2005 and the present date; and (2) who have sustained legally cognizable damages arising or resulting from the release of odors and/or fumes into the community from the activities at the D&J Fill facility; and (3) who reside within 2.0 miles from the D&J Fill facility as evidenced on the map; and (4) motorists on Interstate 10 within 2.0 miles of the D&J Fill facility as evidenced on the map.
In certifying the class, the trial court made numerous factual findings, virtually all of which are challenged in this appeal of the class certification taken by D&J.
In connection with this appeal, D&J filed a motion for leave to attach as an exhibit to its reply brief excerpts of plaintiff's June 12, 2006 deposition transcript. This deposition was not introduced into evidence at the certification hearing. An appellate court cannot review evidence that is not in the record and cannot receive new evidence. Barton v. Barton, XXXX-XXXX, pp. 5-6 (La. App. 1st Cir. 6/9/06), 938 So.2d 779, 782. Accordingly, we deny D&J's motion.

PROPRIETY OF CLASS CERTIFICATION
The class action is a nontraditional litigation procedure permitting a representative with typical claims to sue, on behalf of a class of similarly situated persons, when the question is of common or general interest to persons so numerous as to make it impractical to bring them all before the court. The purpose of the procedure is to adjudicate and obtain res judicata effect on all common issues applicable not only to the representatives who bring the action, but to all others who are similarly situated, provided they are given adequate notice of the pending class action and do not timely exercise the option of exclusion from the class. Ford v. Murphy Oil U.S.A., Inc., 96-2913, p. 4 (La. 9/9/97), 703 So.2d 542, 544; Singleton v. Northfield Insurance Company, XXXX-XXXX, pp. 7-8 (La. App. 1st Cir. 5/15/02), 826 So.2d 55, 61, writ denied, XXXX-XXXX (La. 9/30/02), 825 So.2d 1200.
A trial court's decision to certify a class is a two-step process. Therefore, appellate review of such decisions also follows a two-step analysis. The trial court must first determine whether a factual basis exists for certifying the matter as a class action. These factual findings are reviewed on appeal pursuant to the manifest error standard of review. If the trial court finds that a factual basis exists for certifying the action, it then exercises its discretion in deciding whether to certify the class. This aspect of the judgment is reviewed pursuant to the abuse of discretion standard. Singleton, XXXX-XXXX at p. 7, 826 So.2d at 60-61. Unless a trial court committed manifest error in its factual findings or abused in discretion in deciding that class certification is appropriate, we must affirm the trial court's determination. Id.
Louisiana Code of Civil Procedure article 591 sets forth the prerequisites for maintaining a class action. Paragraph A of that provision sets forth the elements which must be present to maintain a class action, referred to as the elements of numerosity, commonality, typicality, adequate representation, and objectivity (definability). State v. Ford Motor Company, XXXX-XXXX, pp. 5-6 (La. App. 1st Cir. 6/27/07), 965 So.2d 438, 442, writ denied, XXXX-XXXX (La. 10/12/07), 965 So.2d 405. The party seeking to maintain a class action bears the burden of proving these elements. Id.
Even if the plaintiff has met its burden regarding these elements, a trial court must evaluate whether the class action is superior to other available methods for the fair and efficient adjudication of the controversy, utilizing the requisite factors set forth in Paragraph B of Article 591. These factors generally address issues of fairness and efficiency of maintaining a class action. State, XXXX-XXXX at p. 10, 965 So.2d at 445.
D&J asserts that the trial court erred in certifying the class, urging that the numerosity, typicality, adequate representation, and commonality elements are not met. It also submits the evidence does not support the class definition.

NUMEROSITY
The first requisite element for maintaining a class action is that the class is so numerous that joinder of all members is impracticable. La. C.C.P. art. 591(A)(1). In finding this element to be met, the trial court relied on an aerial photograph showing the location where there had been complaints of odors, which extended approximately two miles from the D&J site. The trial court observed that there were numerous subdivisions containing thousands of residents within this two mile radius who could potentially qualify as members of the class.
It is well settled that there is no set number above which a class is automatically considered so numerous as to make joinder impractical as a matter of law. Singleton, XXXX-XXXX at p. 10, 826 So.2d at 62. The party seeking certification should be able to establish a definable group of aggrieved persons. Id.
D&J argues that the trial court erroneously extended the geographical boundary to encompass a two mile radius from the site, which had the effect of exaggerating the numbers in the potential class. It also claims that the trial court's conclusion that there were several large subdivisions near the facility, containing thousands of residents, is not supported by the record and is nothing more than conjecture.
We disagree. The record demonstrates that there are several large subdivisions within a one-two mile radius of the D&J facility. One witness, who lives in Manchac Place, a subdivision containing 100 homes, testified that he lived one to two miles from the facility. Other witnesses, residing closer to the facility, live in subdivisions containing 50 and 75 homes respectively. The class is a definable group, composed of members who have been exposed to odors and fumes emitted from the D&J facility. Simply considering the number of residences in the subdivisions located near the facility, it is obvious that there are hundreds of persons who are potential class members. We find no manifest error in the trial court's determination that the numerosity element has been met.

TYPICALITY
To maintain a class action, the claims of the representative parties must be typical of the claims of the class. La. C.C.P. art. 591(A)(3). This element requires that the claims of the class representatives be a cross-section of, or typical of, the claims of the proposed class. Singleton, XXXX-XXXX at p. 12, 826 So.2d at 63. The typicality element is satisfied if the claims of the class representatives arise of the of the same event, practice, or course of conduct that gives rise to the claims of the other class members and those claims are based on the same legal theory. Id.
The trial court found this element to be satisfied because the claims of the proposed representative is typical of those of the class since all of the claims arise from damages caused by fumes and odors being emitted from the D&J facility. D&J contends that the trial court erred in this determination because there are variations in the type, timing, duration, and extent of the exposure to odors between the proposed class representative and members of the class, as well as differences in the degree of inconvenience or damages suffered by each class member.
The petition alleges that D&J's landfill activities resulted in the emission of odors and fumes from the facility, which constitutes a nuisance under Louisiana law and subjects D&J to liability for damages arising from that conduct. The claims of the class representative clearly arises out of the same course of conduct giving rise to the claims of the prospective class members and are based on the same legal theory. Moreover, Louisiana jurisprudence does not require that the representatives' claims exhibit all of the various types of possible injuries or elements of damages claimed by the class as a whole. Instead, the law requires only that the representatives "typically" and "adequately" represent a cross section of the claims asserted on behalf of the class. Singleton, XXXX-XXXX at p. 13, 826 So.2d at 64. We find no manifest error in the trial court's determination that the element of typicality is satisfied.

ADEQUATE REPRESENTATION
The parties seeking to maintain a class action must demonstrate that the representative parties will fairly and adequately protect the interests of the class. La. C.C.P. art 591(A)(4). The jurisprudence has established a three-part test for determining whether this element is met: (1) the chosen class representatives cannot have antagonistic or conflicting claims with other members of the class; (2) the named representatives must have a sufficient interest in the outcome to insure vigorous advocacy, and (3) counsel for the named plaintiffs must be competent, experienced, qualified, and generally able to conduct the proposed litigation vigorously. Robichaux v. State, Department of Health and Hospitals, XXXX-XXXX, p. 12 (La. App. 1st Cir. 12/28/06), 952 So.2d 27, 35-36, writs denied, XXXX-XXXX, XXXX-XXXX, XXXX-XXXX (La. 6/22/07), 959 So.2d 503, 504.
In finding that the proposed representative would adequately protect interests of the members of the class, the trial court observed that it had not been presented with any evidence of any conflicts of interest which may exist between the proposed class representative and class members. Nor did the court find any evidence that the proposed class representative did not have a strong interest in prosecuting this action or that he would not diligently prosecute this action. Instead, the court stressed that plaintiff, the proposed class representative, lives a short distance from the facility and has been plagued by fumes and odors emitted from the facility, the same problem identified by the testimony of others who reside near the facility offered at the certification hearing.
D&J submits that the proposed representative does not adequately represent the class, claiming that there are potential conflicts between, and the lack of sufficient interest among, the proposed representative and class members. It also urges that the attorneys have a clear conflict of interest that prohibits them from representing the class. None of these claims, however, are borne out by the record.
Instead, the record establishes that Mr. Baumann, the proposed representative, complained of odors he attributed to the D&J facility and expressed his desire to seek an injunction on behalf of the class to prevent the emissions and fumes from the D&J site, as well as the recovery of damages for fumes and odors emitted from the site. There is no evidence to demonstrate that Mr. Baumann is not a proper class representative or that his attorney is in any way inadequate. Accordingly, we find no error in the trial court's determination that the adequate representation element is satisfied.

COMMONALITY/PREDOMINANCE
The "common character" analysis arises twice in the certification inquiry. First, in order to maintain a class action, a court must find that there are questions of law or fact common to the class. La. C.C.P. art. 591(A)(2). If common questions are found to exist, a court may certify a class only if it finds that the common questions predominate over questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. La. C.C.P. art. 591(B)(3); Robichaux, XXXX-XXXX at p. 10, 952 So.2d at 34.
In finding these elements to be satisfied, the trial court stressed that the potential class members have experienced fume and odor emissions, and that the D&J facility is the alleged single source of the contamination. The court also stressed that it would have to decide whether D&J's activities constituted a public nuisance under Louisiana law, a determination which would involve common questions of law since the claimants are alleging a single source of contamination. The court also found that there were common questions of fact regarding damages sustained as a result of exposure to those odors and fumes. The court then found that the common questions predominated over questions that may affect the individual members of the class. In so doing, the court observed that the claimants would be required to prove that there in fact were fumes and odors emitted on the occasions they allege such to have occurred and concluded that to try all of these claims separately, when there are questions of law and fact common to each claimant, would be judicially inefficient. Further, the court stressed that individual suits could lead to inconsistent results and ultimately found that the class action is a superior method for adjudicating the controversy.
D&J attacks this determination, arguing while the potential class members have allegedly encountered some type of "odor," the types of odors vary greatly; and thus, the sources of the potential odors must also vary greatly and cannot be considered common to all class members. D&J also contends there are individual questions of liability because some of the potential class members may have deposited materials at the landfill, thus subjecting themselves to liability. We find no merit to these assertions.
The test for commonality is not a demanding one. Duhe v. Texaco, Inc., 99-2002, p. 12 (La. App. 3rd Cir. 2/7/01), 779 So.2d 1070, 1078, writ denied, XXXX-XXXX (La. 4/27/01), 791 So.2d 637. It requires only that there be at least one issue, the resolution of which will affect all or a significant number of the putative class members. Id. The crux of this case is whether D&J's landfill activities caused the emission of odors and fumes and whether that activity constitutes a nuisance under Louisiana law, thereby subjecting D&J to damages arising from its conduct. Plaintiff claimed that underground fires at the facility caused the emissions. As the trial court correctly observed, plaintiff will be required to prove that there were in fact odors and fumes emitted from the D&J facility on the dates alleged in the petition. The liability determination is thus common as to all of the claimants. While the damage claims may present individualized issues, we find no error in the trial court's determination that questions of law or fact common to the members of the class predominate over those affecting only the individual members.
Nor do we find any error in the trial court's determination that the class action procedure is a superior method to handle the claims for damages arising from the release of odors from the D&J facility. This case is analogous to McCastle v. Rollins Environmental Services of Louisiana, Inc., 456 So.2d 612 (La. 1984), wherein the court found that a class action was a superior method to litigate claims seeking damages for the release of odors and fumes from a chemical waste disposal site. The court observed that the class action would open the courts to many claims that may not have been litigated because they could not be prosecuted economically as individual actions. The court also stressed that the location of virtually all of the witnesses and members of the class in the same vicinity, as well as the identity of the main issues in all liability claims, would facilitate a prompt, efficient and relatively inexpensive single trial on the common nucleus of issues.
Similarly, in the instant case, the witnesses and potential class claimants all reside in the same vicinity, and the main liability issues are common to all class members. Under all of the circumstances of this case, maintaining a class action promotes the goals of effectuating the substantive law, judicial efficiency and fairness the parties.

CLASS DEFINITION
A class must be definable by objective criteria. La. C.C.P. art. 591(A)(5). A class definition must be precise enough to establish which claims and which claimants will be subject to a final judgment of the court for the purposes of res judicata. Singleton, XXXX-XXXX at p. 17, 826 So.2d at 66. A class action not properly defined or delineated would impede, rather than implement the law. Id.
D&J urges that the trial court's definition of the class is vague, not supported by the evidence, does not provide a "readily determinable" class, and will lead to countless meritless claims. Specifically, D&J contends that the court's geographical boundary for the class as being within a two-mile radius from the D&J facility is vague because it does not contain actual physical boundaries and does not identify a center point of the radius. It also submits that the class definition is also vague in its attempt to limit the class to persons who have sustained "legally cognizable damages," and because it does not define the "odors and/or fumes" or the "activities" that allegedly resulted in those odors or fumes.
We agree that the class definition is overbroad and unsupported by competent evidence in one respect. The court identified as potential class members "motorists on Interstate 10 within 2.0 miles of the D&J Fill facility." The inclusion of this group in the class definition was based on deposition testimony from Brian Vandruemel who stated that a co-worker told him she detected odors coming from the landfill while driving on Interstate 10. This statement is inadmissible hearsay, and could not be relied on by the trial court in defining the potential class. Moreover, the inclusion of an overly broad group of persons such as the motoring public could foster countless meritless claims. Accordingly, we vacate that portion of the class definition, but affirm the class definition as amended.

CONCLUSION
For the foregoing reasons, we find no manifest error in the trial court's conclusion that the requirements of class certification are met in this case and we further find that the trial court did not abuse its discretion in certifying the class. However, we vacate that portion of the class definition pertaining to motorists travelling on Interstate 10. The case is remanded to the trial court for proceedings consistent with this opinion. All costs of this appeal are assessed to appellants.
MOTION DENIED; JUDGMENT AFFIRMED IN PART, VACATED IN PART AND REMANDED.
NOTES
[1] Plaintiff, Ace, and its owner effected a tentative settlement contingent on the upholding of class certification in the lawsuit.